UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


RONA YOUNG KEMP, ET AL

CIVIL ACTION

VERSUS

NUMBER 09-1109-JJB-SCR

CTL DISTRIBUTION, INC., ET AL

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, May 5, 2010.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


RONA YOUNG KEMP, ET AL

CIVIL ACTION

VERSUS

NUMBER 09-1109-JJB-SCR

CTL DISTRIBUTION, INC., ET AL


**MAGISTRATE JUDGE'S REPORT**

Before the court is a Motion to Remand filed by plaintiffs Rona Young Kemp, Roxann Young and Carl Young.[1]  Record document number 8.  The motion is opposed.[2]

For the reasons which follow, the plaintiffs' Motion to Remand should be denied.

---

[1] Plaintiffs are the surviving children of Martin Young, who was employed by third party defendant Delta Trailer, Inc. Plaintiffs alleged that Young was working at CTL's terminal and servicing a CTL truck/tank trailer when he was overcome by toxic fumes, fell into the bottom of the tank and died before emergency personnel could rescue him.  This incident is described in paragraph 3 of the petition and amended petitions filed by the plaintiffs.  Record document numbers 1-1, Petition for Damages filed November 3, 2006; Record document number 1-2, First Amended Supplemental and Restated Complaint; Record document number 1-6 Second Amended, Supplemental, and Restated Petition (hereafter, Second Amended Petition).

Unless noted otherwise, citations to record documents are to documents found in this case.

[2] Record document number 9.  Plaintiffs also filed a reply memorandum.  Record document 13.  Oral argument on the motion was held on March 8, 2010, and the transcript of the oral argument has been filed in the record.  Record document numbers 16 and 20.

2

## Background

This removed case is the same case that defendant CTL Distribution, Inc. (CTL) removed in December 2006.[3]  The case was remanded after the first removal when the district court granted the plaintiffs' Motion for Leave to File First Amended, Supplemental, and Restated Complaint, which the court found stated a claim for spoliation against a substituted, non-diverse defendant, Trinity Insurance Services (Trinity).[4]  Plaintiffs' First Amended Complaint also alleged new claims against two CTL employees, Jimmy Davis and Kelvin Perry, and maintained their claim against CTL's truck terminal manager Roger A. McLelland, all of whom are Louisiana citizens.  Plaintiffs alleged that defendants Davis and Perry were negligent in performing their duties of inspecting and filling the emergency air bottle which serviced the truck/tank trailer on which Martin Young was working, and their negligence prevented his rescue and resulted in his death.[5]  Since the amendment allowing Trinity to be added as a defendant destroyed diversity and required remand, the court did not address the viability of the proposed claims against Davis and Perry.  Nor was it necessary for the court to address CTL's claim that McLelland

---

[3] Civil Action No. 06-927-JJB-DLD.

[4] *Id.*, Record document numbers 16, 22 and 23.  Plaintiffs are citizens of Texas and Louisiana.  Trinity is a Louisiana corporation.

[5] Record document number 1-2, §§ 1, 12A.

3

was improperly joined, which was alleged in the Notice of Removal and raised in its opposition to the plaintiff's Motion to Remand.[6]

Upon filing of the First Amended Complaint[7] an order was issued on June 7, 2007 remanding the plaintiffs' case to state court where it proceeded until the plaintiffs filed their Second Amended Petition.  The state court granted the motion to file the Second Amended Petition on December 8, 2009, and CTL removed the case on December 30.

Thus, the Second Amended Petition resulted in the second removal of this case by CTL.  The Second Amended Petition named only two defendants - CTL and McLelland.  Plaintiffs did not name Trinity, Davis or Perry as defendants and did not include any of the claims against them that were pled in the First Amended Complaint.  Plaintiff again moved to remand the case to state court and asserted the following grounds for remand:

1. CTL waived its right to remove by taking affirmative steps in state court after receiving the Second Amended Petition;

2. CTL cannot establish the improper joinder of defendant McLelland;

---

[6] *Id.*, record document numbers 6, 11 and 16.

[7] Although the recommendation and ruling only addressed whether non-diverse Trinity should be substituted as a defendant, the First Amended Complaint which was the basis for the remand was filed as proposed by the plaintiffs.  Thus, plaintiffs' case on remand to state court named as defendants and asserted claims against Trinity, Davis and Perry.  Civil Action Number 06-927-JJB-SCR, record document numbers 4, 16, 22 and 23.

3. CTL cannot establish that the equitable exception of *Tedford*[8] applies to overcome the one year bar to removal in 28 U.S.C. § 1446(b);

4. Even if *Tedford* applies CTL's removal was untimely under § 1446(b); and,

5. CTL did not obtain a timely consent to removal from defendant McLelland or third-party defendants Delta Trailer, Gulf South Insurance Agency, LLC and Gemini Insurance Company.

Based on the applicable law and the analysis which follows, the record demonstrates that CTL has met its burden of establishing that the court has diversity jurisdiction and that removal was proper based on the allegations in the plaintiffs' Second Amended Petition.

## **Applicable Law**

It is well settled that when faced with a motion to remand, the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists. *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335, *rhrg. denied*, 70 F.3d 26 (5th Cir. 1995).

The party seeking removal based on improper joinder of an in-state party bears a heavy burden of proving that the joinder was improper. *Great Plains Trust Co. v. Morgan Stanley Dean Witter &*

---

[8] *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003)

*Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  The statutory basis for the doctrine of improper joinder is found in 28 U.S.C. §§ 1441 and 1359.  *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004), *cert. denied,* 125 S.Ct. 1825 (2005).  Since the purpose of the inquiry is to determine whether the in-state defendant was properly joined, the focus must be on the joinder, not the merits of the plaintiff's case.  *Id.*

There are two recognized ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Id.*, *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).  In the latter situation the test for improper joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant.  Stated another way, it means that here is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.  *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 385 (5th Cir. 2009).  This means that there must be a reasonable possibility of recovery, not merely a theoretical one.  *Campbell v. Stone Ins., Inc.,* 509 F.3d 665, 669 (5th Cir. 2007).

The court may decide the question of whether the plaintiff has a reasonable basis of recovery under state law either by employing a Rule 12(b)(6), Fed.R.Civ.P., analysis, or by piercing the

pleadings and conducting a summary inquiry. *Id*. In resolving questions of improper joinder, all disputed questions of fact and ambiguities in the controlling state law are resolved in favor of the non-removing party. *Carriere v. Sears, Roebuck and Co.* 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60 (1990).

The state law governing the court's analysis of the improper joinder issue in this case is Louisiana's law setting forth the circumstances under which a corporate officer or employee can be held individually liable for injuries to third persons. This law is explained in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973). In *Canter* the court adopted the following criteria for imposing liability on individual officers or employees for breaching a duty arising solely because of the employment relationship:

> 1. The principal or employer owes a duty of care to the third person ... breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances--whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

7

4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment.  He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.  If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

*Id.* at 721; *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (2005).

Under § 1446(b) the time limits for filing the notice of removal are specified as follows:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Under the first paragraph of § 1446(b) the 30-day period for filing a notice of removal begins to run from the date proper service of process is made on the defendant.  *Badon v. RJR Nabisco*

8

*Inc.*, 224 F.3d 382, 390 (5th Cir. 2000), *citing*, *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347, 119 S.Ct. 1322, 1325 (1999).[9]

Generally, a case that is not removable can become removable pursuant to a voluntary act of the plaintiff. *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 547 (5th Cir. 1967). The "other paper" that initiates the right to remove under the second paragraph of § 1446(b) must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which support federal jurisdiction. *Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000).

The exception under § 1446(b) that a case may not be removed on the basis of diversity jurisdiction more than one year after commencement of the action, was addressed by the Fifth Circuit in *Tedford v. Warner-Lambert.* The court addressed whether the statute's one year limit on removal was absolute or subject to equitable exception. The court concluded that § 1446(b) was not inflexible and that the conduct of the parties may affect whether it is equitable to strictly apply the one year limitation on removal. Therefore, under circumstances which indicate that a

---

[9] "Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, through service or otherwise, after and apart from service of the summons, but not by mere receipt of the complaint unattended by formal service." *Murphy Brothers*, *supra*. (internal quotations omitted).

plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one year limit in § 1446(b) be extended. *Tedford,* 327 F.3d at 426-29.

A waiver of the right to remove must be clear and unequivocal. *Id.*, at 428. The right to remove is not lost by participating in state court proceedings short of seeking an adjudication on the merits. *Id.*, *citing*, *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir. 1989), *superceded by statute on other grounds as stated by*, *Dendinger v. First Nat'l Corp.*, 16 F.3d 99 (5th Cir 1994).

The rule of unanimity requires that "all defendants who are properly joined and served must join in the removal petition, and that failure to do so renders the petition defective." *Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1262 (5th Cir. 1988). Furthermore, all served defendants must join in the petition no later than 30 days from the day on which the first defendant was served. *Id.* at 1263.

## **Analysis**

### **Roger McClelland was improperly joined**

The first issue that must be addressed is the alleged improper joinder of CTL's terminal manager Roger McLelland. Plaintiffs alleged a claim against McLelland in their original state court Petition for Damages. However, the first remand made it

unnecessary to determine whether he was improperly joined.   The question must now be answered, because if diversity of citizenship is lacking the remaining procedural issues raised by the plaintiffs are moot.

Relying in large part on the allegations in the Second Amended Petition and some evidence outside the pleadings, the plaintiffs argued that they have alleged a viable executive officer and spoliation claim against McLelland.   Plaintiffs asserted that their allegations are very specific and show the delegation to McClelland of duties he personally owed to Martin Young, and breach of the duties through McClelland's personal fault.   According to the plaintiffs, discovery has also revealed substantial evidence to support the allegations of personal fault against McLelland, including the newly alleged spoliation claim.   In summary, the plaintiffs asserted that they not only have pled sufficient facts against McLelland, they have bolstered those allegations with the results of discovery.

Defendant CTL noted the plaintiffs alleged that at all times McLelland was in the course and scope of his employment, and the alleged breaches of duty in the petition referred to both CTL and McLelland without distinguishing between the two.   Defendant CTL argued that this clearly indicates any alleged breaches of duty by McLelland are for failure to carry out his general job duties rather than the breach of a personal duty.   Furthermore, defendant

CTL argued that the plaintiffs' allegations against McLelland are nothing more than conclusory and all are related to his status as the terminal manager.  Defendant maintained that the only facts the plaintiffs alleged are that CTL owned the terminal and that McLelland was the terminal manager.  For example, defendant asserted, there are no allegations that McLelland had any individual contact with decedent.  Therefore, defendant argued, any alleged conduct by McLelland could only be considered general administrative actions, as opposed to personal actions emanating from a personal duty owed to Martin Young.

Based on the allegations of the Second Amended Petition and the bits of evidence cited by the plaintiffs, the defendants have satisfied their burden of establishing improper joinder.

First, the Second Amended Petition does not allege facts indicating McLelland owed a personal duty with regard to any of the failures the plaintiffs alleged caused Martin Young's death.  As noted by CTL, the only facts alleged are that CTL owned and operated the truck terminal where Martin Young's employer had its garage, and McLelland was the terminal manager.  The remaining allegations contained in paragraphs 4, 5, 8(a)-(z), 10 through 13 describe general duties within the scope of McLelland  employment as terminal manager, duties which were - at most - owed to all of

12

the workers at the terminal.[10]   Likewise, the alleged breaches of these duties are not personal to Martin Young.   Rather, they are alleged failures to carry out general duties and responsibilities as manager of the facility where the accident occurred.

For example, the plaintiffs alleged in the Second Amended Petition, paragraph 5, that McLelland had a duty to comply with all federal and state statutes and regulations and all industry standards, the duty to establish and enforce procedures whereby contents of Material Safety Data Sheets would be transmitted to individuals like Martin Young, and the duty to maintain required documents.   Including statements that McLelland had the duty to individuals "like Martin Young", and that he accepted the delegation of duties from CTL by "his personal participation in these activities," does not equate to alleging a factual basis for a specific breach of a personal duty owed to Martin Young.   The allegations are still nothing more than a claim that McLelland failed to fulfill his job duties, which are duties that he was generally obligated to perform for his employer and which also may have benefitted all employees at the terminal.

---

[10] Plaintiffs' alleged that all the breaches of duty set forth in paragraph 8(a)-(z) were committed within the course and scope of McLelland's employment with CTL.   Second Amended Petition, ¶ 10. As pointed out by CTL, the plaintiffs' allegations did not distinguish any of the duties or breaches of duties as to McLelland from those alleged against CTL.   This supports the conclusion none of the allegations against McLelland fall outside the scope of his general job responsibilities to his employer/other employees at the terminal.

This conclusion applies equally to what the plaintiffs' characterized as their new spoliation claim against McLelland. The spoliation allegations show a generally alleged duty that McLelland had to his employer to maintain documents and records and that he failed to do so. Plaintiffs also alleged further that CTL was vicariously liable for McLelland's breach of this duty and his intentional spoliation of evidence.[11] Again, nothing about these allegations supports the plaintiffs' argument that, with regard to spoliation, they have alleged McLelland specifically breached a personal duty he owed to Martin Young.[12]

Second, although the plaintiffs argued that discovery has revealed substantial evidence which bolsters the allegations of personal fault against McLelland, the bits of evidence supplied by the plaintiffs belie their assertion.[13] Review of the exhibits cited by the plaintiffs did not reveal any evidence of McLelland's personal knowledge of some harmful condition or circumstance

---

[11] Second Amended Petition, ¶¶ 5, 10-13.

[12] For purposes of this motion and addressing the plaintiffs' argument, it is assumed that Louisiana law recognizes spoliation as a valid tort claim. *See, Union Pump Co. v. Centrifugal Technology Inc.*, 2009 WL 3015076 (W.D.La. Sept. 18, 2009)(Louisiana Supreme Court has not yet recognized spoliation as valid tort claim, but Louisiana Courts of Appeal have done so).

[13] The exhibits cited and relied on by the plaintiffs are found at record document number 8, Exhibits 8 - 13 and 19. On page 28 of the plaintiffs' memorandum the plaintiffs cited to page 82 of McLelland's deposition in their Exhibit 8, but this page was not included in the exhibit.

related to the incident which is the basis of the plaintiffs' suit. Nor did the exhibits include any information which revealed McLelland had a personal duty to Martin Young, the breach of which caused his damages, as opposed to general administrative responsibility for ensuring that all workers at the terminal followed safety procedures and other regulations.

In summary, the record is devoid of allegations or evidence of a specific breach of a personal duty owed to Martin Young by McLelland, or that he created or had any personal knowledge of a harmful condition sufficient to create a personal duty to Martin Young. Merely reciting a list of alleged duties and failures and inserting Martin Young's name in the allegations does not transform the allegations into facts sufficient to allege that McLelland had a personal duty the violation of which specifically caused Martin Young's injury and damages. The allegations are conclusory and essentially amount to a claim that McLelland is liable based on the position he held as terminal manager for CTL. Under *Canter*, attempting to hold McLelland personally liable for this type of alleged technical/vicarious fault is not a viable claim. CTL has met its burden of showing that under state law the plaintiffs have no reasonable possibility of recovery against McLelland.

### An equitable exception under *Tedford* is warranted in this case

The next issue that must be addressed is whether defendant CTL's removal of the Second Amended Petition is barred by the one

year time limit in § 1446(b).[14]  Defendant essentially relied on the following factors to support its argument for an equitable exception: (1) plaintiffs convinced this court to substitute non-diverse defendant Trinity and defeated CTL's first removal, but never served or attempted to serve defendants Trinity, Perry or Davis; (2) after the case was remanded the plaintiffs never sought any discovery from defendants Trinity, Perry or Davis, and the discovery they did pursue from CTL and McLelland did not develop the claims made against these three defendants.

The facts relied on by defendant CTL to support its argument are apparent from the record and undisputed by the plaintiffs.  In the two and one-half years since the case was remanded, the plaintiffs never served or attempted to serve non-diverse defendants Trinity, Davis or Perry, and never sought discovery from them.  Therefore, the next logical step is to examine the plaintiffs' explanation for their post-remand conduct.  Plaintiffs' response to CTL invoking the *Tedford* exception essentially takes two paths: (1) plaintiffs assert they made a good faith decision to delay serving Trinity until more facts could be obtained; and, (2) CTL prolonged this process by obstructing discovery efforts, until the plaintiffs finally obtained most of the facts and decided that they should drop the claims against Trinity, Davis and Perry and

---

[14] Suit commenced in state court on November 3, 2006 and the second removal did not occur until December 30, 2009.

focus on proving the liability of CTL and McLelland.

Plaintiffs' explanations are not credible and are unpersuasive. Simply put, the plaintiffs failed to offer any cogent explanation or factual basis for withholding service and delaying seeking discovery from Trinity, Perry or Davis. This is readily apparent from the plaintiffs' memoranda and their counsel's statements during oral argument. In their memorandum, the plaintiffs stated that they attempted discovery and then learned that Trinity more likely than not played the role of servant to CTL and McLelland in spoliating the original police report, and discovery revealed that Trinity tried to obtain other internal documents which "CTL and McLelland have apparently spoliated as well." Plaintiffs stated that based on this "discovery" they made a good faith strategic decision in September 2007 to delay serving Trinity until more facts could be obtained, and take the chance that later service could be the basis for exceptions under state law. Plaintiffs notably did not cite, provide or discuss with any specificity the information/discovery they say they relied upon to make the decision not to promptly serve Trinity as required by state law and risk dismissal in state court.[15]

During oral argument counsel for the plaintiffs was specifically asked no less than six times why Trinity and/or Perry

---

[15] Record document number 8-1, Plaintiffs' Memorandum in Support of Motion to Remand, pp. 12-13.

and Davis were not served.  The answer was always nonresponsive, vague and factually unsupported.[16]  For example, counsel's first answer was "[b]ecause the first thing we did as soon as this case was remanded the first time was notice the deposition of Roger McLelland," to find out what the facts were.[17]  Another response was that the three nondiverse defendants were not served "[b]ecause we needed context for what was going on," and "we were attempting to understand the context in which they rendered the rescue operation."[18]  No coherent reason was ever given for conducting discovery solely from other defendants in order to find out information related to claims against Trinity, Davis and Perry, rather than serving these three defendants and obtaining discovery directly from them about their role and conduct related to the incident and the post-incident investigation.  Nor was any explanation given when the court questioned why the plaintiffs were attempting to discover information they maintained was critical to their claims against Trinity, Davis and Perry from other defendants, rather than serving Trinity, Davis and Perry and letting them participate in that discovery.[19]  These examples are sufficient to illustrate that counsel's responses to the questions

---

[16] Transcript, pp. 7-11, 18-19, 22-23.

[17] *Id.*, pp. 7-8.

[18] *Id.*, pp. 10-11, 18.

[19] *Id.*, pp. 8, 9, 12, 13, 15-19, 21, 22.

18

were not really answers, rather they simply begged the question. Plaintiffs' explanations as set forth in their memoranda and at oral argument for not serving Trinity, Davis or Perry are not reasonable and are not factually supported.  Thus, there is no basis to find the explanations credible and they are not convincing.

Plaintiffs attempted to explain their delay and decision to not serve the these three defendants by focusing on defendant CTL, and claiming that it obstructed and thwarted the plaintiffs' efforts to obtain information about defendants Trinity, Davis and Perry.  This explanation might make some sense as to Davis and Perry, who were CTL employees, but certainly makes no sense as to Trinity.  Accepting as true the plaintiffs' assertion that defendant CTL was obstructing their efforts to obtain information about Trinity, then the obvious and logical solution to the problem would be to promptly serve Trinity with the suit and discovery requests and thereby obtain the necessary facts directly from Trinity.  Instead, the plaintiffs chose to not serve Trinity as required by state law and (supposedly) attempted to obtain the necessary information indirectly from the (allegedly) recalcitrant defendant CTL.  Plaintiffs post-remand course of conduct was clearly not a reasonable litigation strategy.  Rather, it serves to prove that they knew they never had a claim against Trinity, Davis or Perry, and the plaintiffs' true motive for joining them as

defendants was to destroy this court's diversity jurisdiction.

There may be some instances where the fact of substantial progress in state court would shift the analysis such that it would not be equitable to extend the one year time limit for removal. But this is not such a case.  As explained above, the plaintiffs' post-remand conduct convincingly demonstrates that their motive for joining the non-diverse defendants was to get the case remanded. Although for the past two and one-half years there has been appreciable activity in the state court, it does not appear that much actual progress had been made toward the ultimate resolution of the case.[20]  No trial date was ever set in state court, and any discovery that has been accomplished thus far will not be lost if the case remains in this court.

Finally, the plaintiffs argued that the facts of this case are not like *Tedford* where there was a clear course of manipulative conduct surrounding the one year time limit for removal.   In the

---

[20] Plaintiffs and  CTL differ in their characterization of the amount of progress made in state court.  According to counsel for the plaintiffs, significant document and other discovery has taken place.  Counsel for CTL stated that at most four depositions have been taken, and there has been limited progress in discovery. *See*, Transcript, pp. 43-46, 53-59, 62-69; Plaintiffs' Memorandum in Support, pp. 12-14; Plaintiffs' Reply Memorandum, pp. 1-4; CTL's Opposition Memorandum, p. 3.  Nevertheless, it is uncontested that no trial date has ever been set and that the case has progressed little since the state trial court ruled on the discovery dispute - a dispute that began a lengthy appeals process that was still ongoing at the time of removal.  Plaintiffs acknowledged that 2009 was dominated by a long process of appeals and applications for writs - all related to the state court trial judge's decision on a discovery dispute.

context of a *Tedford* analysis this argument carries little weight. An equitable exception largely depends on the conduct of the parties, which means that the facts of each case must be considered.   Plaintiffs also cited several district court cases where the court determined that the facts did not support a finding of forum manipulation and equitable tolling.   Again, these cases are generally not helpful because of the nature of the *Tedford* exception, and because there is really no comparison between the facts in them and the circumstances of this case.

In summary, based on the undisputed facts contained in the record, the only reasonable inference is that the plaintiffs never intended to pursue claims against non-diverse defendants Trinity, Davis and Perry, and joined them only to cause the case to be remanded.   Plaintiffs then delayed dismissing defendants Trinity, Davis and Perry for more than two years after the one year time limit for removal expired to prevent defendant CTL from timely removing the case under § 1446(b).   Defendant has met its burden of establishing that the record in this case supports an equitable exception to the one year rule.

### There was no waiver of the right to remove

Plaintiffs argued that CTL's conduct in state court waived its right to remove this case.   Plaintiffs rested this argument on the following action by CTL: during the 30-day period after receipt of the Second Amended Petition, CTL voluntarily opposed the

plaintiffs' application for writs to the Louisiana Supreme Court. According to the plaintiffs, this act demonstrates CTL's waiver and intention to litigate in state court because CTL could have avoided taking this step by removing the case before their opposition was due, or by asking for an extension to file the opposition to the writ.

Plaintiffs' waiver argument fails.  In the Fifth Circuit a defendant does not lose the right to remove by participating in state court proceedings that do not involve seeking an adjudication on the merits.  The Louisiana First Circuit Court of Appeals reversed the trial court's discovery/sanctions ruling which was adverse to CTL.[21] Plaintiffs sought review by the Louisiana Supreme Court and CTL filed an opposition to the plaintiffs' writ application.  This action cannot reasonably be construed as CTL voluntarily seeking a determination on the merits of the case, or in any way indicating that it was invoking the process of the state court and clearly, unequivocally waiving its right to remove.

**The removal was timely**

Plaintiffs and CTL differ in their view of the correct trigger date for CTL's second removal of this case.  Plaintiffs argued that CTL's removal is untimely by over two years because the trigger date for removal was 90 days after the order of remand was filed in

---

[21] Plaintiffs Exhibit 4.

the state court record.  Defendant argued that it did not have the right to remove the case until it received the Second Amended Petition which dropped Trinity, Davis and Perry as defendants. According to the plaintiffs, under Louisiana Code of Civil Procedure Article 1201.C, they had until September 19, 2007 to request service.  Plaintiffs argued that when the date passed, under the second paragraph of § 1446(b) CTL had actual notice that service did not occur, thereby triggering its right to remove and required removal within 30 days.  Thus, plaintiffs contend, CTL's removal on December 30, 2009 was more than two years late.

Plaintiffs' arguments are unpersuasive.  Plaintiffs did not cite any controlling or persuasive authority for their theory that the expiration of the period for service in state court was the trigger date for removal.  Moreover, the expiration of this period did not change the fact that non-diverse parties were still named as defendants.  When the time for service expired, CTL did not have the right to remove because the existence of diversity has to be determined from the citizenship of the parties named and not from the fact of service.[22]  It is undisputed that at that point the state court pleadings showed that, although they were unserved,

---

[22] *See*, *New York Life Insurance Co. v. Deshotel*, 142 F.3d 873, 883-4 (5th Cir. 1998)(defendant cannot remove an action if the citizenship of any co-defendant joined by the plaintiff in good faith destroys complete diversity regardless of service or non-service on the co-defendant).

Trinity, Davis and Perry were still defendants.[23]

On December 3, 2009 CTL received a copy of the Second Amended Petition by which the plaintiffs dropped their claims against non-diverse defendants Trinity, Perry and Davis.   Receipt of this evidence of the plaintiffs voluntary act dismissing the three unserved defendants gave CTL the first notice that the case had become removable.[24]   Under the second paragraph of § 1446(b) CTL had to file its notice of removal within 30 days after this date.   CTL did so by filing for removal of this case on December 30, 2009. Therefore, CTL's removal was timely.

### Third-party defendants are not required to consent to removal

The final procedural issue that must be addressed is the plaintiffs' claim that CTL's recent removal was defective because neither McLelland nor the third-party defendants timely consented to the removal.

Plaintiffs do not have any controlling or persuasive legal

---

[23] At oral argument both counsel were questioned regarding any procedural mechanism available in state court which would allow the defendant to obtain dismissal of the unserved defendants.   Neither could identify any.   Transcript, pp. 37-43, 48.

[24] The other paper that activates the right to remove under the second paragraph of § 1446(b) must result from a voluntary act of the plaintiff that gives the defendant notice of the changed circumstances which support federal jurisdiction.   *Addo v. Globe Life*, *supra*.   Since CTL maintained its position that defendant McLelland was fraudulently joined, the plaintiffs' dismissal of the three unserved defendants gave CTL notice that the case had become removable and had to be removed within 30 days.

authority to support their position.  McLelland's consent is a non-issue.  Consent is only required from properly joined defendants. Plaintiffs improper joinder of McLelland means that CTL did not have to obtain his consent to the removal.[25]  If McLelland had been properly joined then diversity would be lacking and his consent would not need to be addressed.

With regard to the consent of the third-party defendants the plaintiffs' position is unsupported.  The only case cited by the plaintiffs to support their argument is *Murphy v. Newell Operating Co.*, a Massachusetts district court case.[26]  While the *Murphy* decision implies that a third-party defendant must timely consent to removal, that was not the issue addressed, analyzed or resolved in the case.  Therefore, the *Murphy* decision relied on by the plaintiffs is not persuasive.  In the absence of any controlling or persuasive Supreme Court or Fifth Circuit precedent, there is no basis to find that CTL's removal was defective for failure to obtain consent from the third-party defendants.[27]

--------

[25] As a general rule removal requires the consent of all co-defendants.  But in cases of alleged improper joinder this requirement as to improperly joined parties would not make sense, since removal in those cases is based on the argument that no other proper defendant exists.  *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007).

[26] 245 F.Supp.2d 316, 318-9 (D.Mass. 2003).

[27] Consent of a third-party defendant was addressed by a district court in the Fifth Circuit.  *See*, *Hydro-Action, Inc. v.*
(continued...)

## Conclusion

Defendant CTL established that non-diverse defendant Roger McLelland was improperly joined and that the court has diversity jurisdiction.   Defendant CTL has also met its burden of establishing that the record in this case supports an equitable exception under *Tedford*.   Plaintiffs' claims of procedural defects in the removal are not factually or legally supported.   Therefore, CTL has demonstrated that it properly removed this case under §§ 1441(a) and 1446(b).

## Recommendation

It is the recommendation of the magistrate judge that the Motion to Remand filed by plaintiffs Rona Young Kemp, Roxann Young and Carl Young be denied.

Baton Rouge, Louisiana, May 5, 2010.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[27](...continued)
*James*, 233 F.Supp.2d 836, 840 (E.D.Tex. 2002).   The court noted that the third-party defendant could have objected to the removal of the claim against it, but chose not to do so.   On the question of consent, the court stated that the removing defendants did not need the timely consent of the third-party defendant to remove the case from state court.   *Id.*   at 841.

26