UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RONA YOUNG KEMP, ET AL.

CIVIL ACTION NO. 09-1109-JJB-SCR

VERSUS

CTL DISTRIBUTION, INC., ET AL.

**RULING ON MOTION TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

This case is a wrongful death and survival action brought by the three surviving children of Martin Young (collectively, "plaintiffs"), a deceased worker who died in the course of his employment while servicing a truck and tanker owned by CTL Distribution, Inc. ("CTL") at the garage of his employer, Delta Trailer, Inc. ("DTI"), in Iberville Parish, Louisiana. (Complaint, Doc. 1-1, pp. 2-10). The Youngs brought suit against CTL and Roger McLelland, the manager of the CTL truck terminal. (*Id.*).[1] The case was originally brought in state court and then removed, remanded, re-moved, appealed, and ultimately maintained in this Court. (*See* Opinion of Fifth Circuit, Doc. 60). During the state court proceedings, CTL brought a third-party complaint against DTI, alleging DTI owes them full indemnity arising from a service agreement between CTL and DTI. (CTL's First Supplemental and Amended Third Party Demand, Doc. 30-3). CTL also brought suit against Gulf South Associates, Inc. ("Gulf South"), an insurance agency which allegedly failed to include CTL as an insured in DTI's insurance policies.[2] Finally, CTL also brought a third-party action against DTI's insurer, Gemini Insurance Company ("Gemini"), seeking recognition as an additional insured in DTI's policy.

---

[1] McLelland has since been voluntarily dismissed from this suit by the plaintiffs (*see* Doc. 65), and therefore any joint motions filed by CTL and McLelland will only be discussed as they pertain to CTL.
[2] CTL incorrectly refers to Gulf South as Gulf South Insurance Agency, L.L.C. in its pleading.

1

Before the Court are DTI's motion for summary judgment filed against CTL (Doc. 30-1; *see also* Memo. in Opp., Doc. 44),[3] a competing cross-motion for summary judgment filed by CTL against DTI (Doc. 34-1; *see also* Memo. in Opp., Doc. 43), and Gulf South's motion to dismiss CTL's third-party complaint (Doc. 32-1; *see also* Memo. in Opp., Doc. 40 *and* Reply Brief, Doc. 48). Oral argument is unnecessary. Jurisdiction exists pursuant to 28 U.S.C. §§ 1332 and 1367.

## I. Factual Background

Martin Young was employed by DTI, a truck maintenance company which operated a garage in St. Gabriel, Louisiana. CTL owned and operated the truck terminal where DTI's garage was located. On or about January 4, 2006, Young died after he was allegedly exposed to toxic fumes from chemical material left in a tank trailer. The tank trailer had been used to haul molten sulfur, and the fumes are alleged to have been hydrogen sulfide volatilized from the residue in the tank. Young allegedly inhaled these fumes without respiratory protection while cleaning the inside of the tank. Emergency procedures to provide Young with air to breathe until rescuers arrived ultimately proved unsuccessful, and Young died before emergency personnel could extricate him from the tank.

DTI and CTL entered into a service agreement on or about September 1, 2005, where DTI agreed to provide to CTL certain maintenance and repair services for CTL's equipment at the St. Gabriel location. The service agreement provided that DTI must maintain liability insurance of at least $1 million. (Doc. 34-2, ¶ 14(b)). Immediately below that provision, the agreement also provided that "CTL will be named as additional

---

[3] In addition to DTI's original motion in this court (Doc. 30), DTI had originally moved for summary judgment in state court and re-urged the motion once the case was re-removed (*see* Docs. 31, 33). All references to its summary judgment motion will be to Doc. 30.

insured in the above policies *where applicable*." (*Id.*, ¶ 14) (emphasis added). DTI obtained a policy of general liability insurance from Gemini through Gulf South's efforts as procuring agent for DTI.

The service agreement also provided for indemnification of CTL by DTI. The agreement stated, in pertinent part, as follows: "DTI hereby agrees to indemnify, defend, and hold harmless … CTL … from and against any injury (including death), damage, or loss arising under or in connection with this Agreement unless such loss is caused by the gross negligence of CTL…." (Doc. 34-2, ¶ 15). This provision included employees in its definition of CTL. (*Id.*).

## II. Standard of Review

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

B. Motion to Dismiss Standard

Pursuant to Fed. Rule Civ. P. 12(b)(6), on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded, non-conclusory facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. When well-pleaded factual allegations populate the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. Courts may consider not only the complaint itself, but also documents attached to the complaint or

documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). The facts in the complaint are viewed collectively, not scrutinized in strict isolation. *Id.*

### III. Law and Discussion

In their cross motions for summary judgment, CTL and DTI dispute the scope and effect of the cited provisions of the service agreement. CTL argues that the language of the agreement plainly and clearly requires DTI to indemnify it in this action (unless and until its gross negligence is shown). It also argues that the insurance provisions of the service agreement plainly required DTI to add it as an additional insured to the $1 million liability insurance policy.

DTI argues that the "where applicable" language in the insurance policy renders that provision ambiguous. It also argues that CTL, as the drafter of the agreement, should have that term construed against it, thereby relieving DTI of a duty to add CTI to the Gemini liability policy at issue here. DTI also argues that the indemnification language does not unequivocally cover basic negligence by CTL, and thus public policy requires construing the indemnification in favor of DTI and against CTL.

In its motion to dismiss, Gulf South argues simply that CTL was never its client and thus only owed a duty to DTI, not CTL. CTL argues in opposition that DTI's president, Huey Beason, admitted in his corporate deposition to having directed Gulf South to add CTI as an additional insured under the liability policy with Gemini. (CTL Third Party Demand, Doc. 30-3, ¶ 21). Beason further testified that Gulf South prepared the certificate of insurance listing CTL as the certificate holder, dated January 6, 2006. (*Id.*, ¶ 22). Thus, CTL argues the procurement contract between DTI and Gulf

5

South contemplated CTL as a third party beneficiary via stipulation *pour autrui*. The Court will treat each argument in turn.

### A. Insurance Provisions in the Service Agreement

The Court is essentially called upon to determine whether the "where applicable" language changes the otherwise plain meaning of the provision requiring DTI to add CTL as an additional insured to the policies listed in the service agreement. The service agreement sets out four different types of insurance policies CTL required DTI to maintain: garage insurance, liability insurance, environmental insurance, and workers compensation insurance. The agreement required DTI to provide proof of insurance to CTL and further required that CTL be named as additional insured in the four policies "where applicable." DTI argues those words created a suspensive condition which was, in effect, illusory. As such, it contends the condition was at the whim of CTL and therefore nullifies the entire requirement that it name CTL as an additional insured. CTL argues that "where applicable" simply means that DTI was not required to add CTL to the policies where it did not make sense to do so. It argues that it would be illogical to add it as an additional insured to the workers comp insurance since CTL would gain no additional protection from that insurance policy. In contrast, it would gain additional protection by being added to DTI's liability protection as it would shift the risk of injury or accident to DTI.

The Court finds the presence of "where applicable" renders the agreement ambiguous. The service agreement contains no term which elaborates on this puzzling provision. The agreement fails to provide on what condition and/or by what mechanism the "where applicable" language triggers. Without any idea of what standard the court

6

should apply, the Court cannot say with any degree of certainty if the otherwise-clear general mandate for DTI to add CTL as an additional insured to its insurance policies is "applicable" to the liability insurance policy.

Because this provision is ambiguous on its face, the Court must rely on other interpretive tools. The first point of contention deals with the venerable rule that a contract will be construed against a party drafting the agreement. La. C.C. art. 2056.[4] The parties dispute who drafted the agreement. Steve Craig, the corporate deponent of CTL, stated in his deposition that DTI provided the service agreement and the parties negotiated certain provisions together. (Craig Deposition, Doc. 34-5, pp. 4-7). Huey Beason, the corporate deponent of DTI, stated in his deposition that CTL drafted the agreement. (Beason Deposition, Doc. 43-1, Ex. 2, p. 5). A genuine dispute remains regarding this material fact, and thus the Court cannot construe the contract against either party at this point in the case. Likewise, La. C.C. art. 2057 provides for construction of a contract against an obligee or against a party that should have explained a certain term to another party but failed to do so. This provision is equally impossible to apply without facts showing who drafted the agreement, a fact which remains in dispute.

DTI argues the "where applicable" language created a suspensive condition which renders the obligation to add CTL as an additional insured illusory and void. La. C.C. art. 1770 provides in part that "[a] suspensive condition that depends solely on the whim of the obligor makes the obligation null." A suspensive condition is an obligation which cannot be enforced until an uncertain event occurs. La. C.C. art. 1767. A

---

[4] Article 2056 provides in full: "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."

suspensive condition wholly dependent on the obligor, previously called a potestative condition in Louisiana law, arises when an obligation is triggered only upon an event which is in the power of one contracting party to bring about or hinder. *State v. Laconco, Inc.*, 430 So.2d 1376, 1385 (La. App. 1st Cir. 1983). But the contractual language at issue here does not define when or who decides what is "applicable," and therefore the Court cannot at this juncture determine if this created a condition at all, suspensive or otherwise. It must be left to parol evidence to aid the Court in determining the true intent of the parties, La. C.C. art. 2045, so that the words "where applicable" be given effect, if that is possible. *See* La. C.C. arts. 2048-49. Otherwise, that term may be found void on vagueness grounds. *See, e.g., Cascio v. Schoenbrodt*, 431 So.2d 32, 34-35 (La. App. 1st Cir. 1983).

Summary judgment is therefore inappropriate on both parties' claims regarding DTI's alleged duty to add CTL as an additional insured on its liability policy.

B. <u>Indemnity Provisions in the Service Agreement</u>

DTI argues that the indemnity provision fails to unequivocally provide for its responsibility for CTL's negligence. As such, it argues a strict construction of the provision relieves it from any duty to indemnify CTL. CTL argues the provision is perfectly enforceable as written because no "magic words" are required to cause DTI to indemnify it for its negligence.

"[A] contract for indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not express in unequivocal terms." *Green v. TACA Int'l Airlines*, 304 So.2d 357, 361 (La. 1974). "A contract of indemnity whereby the indemnitee is indemnified against the

consequences of his own negligence is strictly construed…." *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La. 1997). When an agreement contains a doubtful provision, "including indemnity agreements, [courts] must endeavor to ascertain what was the common intention of the parties…." *Home Ins. Co. of Illinois v. Nat'l Tea Co.*, 588 So.2d 361, 364 (La. 1991) (quoting *Polozola*, 343 So.2d at 1003). If, after applying the general rules of contract construction, "the intent of the parties to indemnify against negligence remains equivocal, a presumption or inference arises that the parties did not intend to hold the indemnitee harmless from such liability." *Home Ins. Co.*, 588 So.2d at 364 The Fifth Circuit has stated that "Louisiana law does not require the 'magic words' in order for an indemnity provision to cover the indemnitee's own negligence." *In re Incident Aboard D/B Ocean King*, 758 F.2d 1063, 1068 (5th Cir. 1985).

With these principles in mind, the Court easily concludes that the indemnity provision applies here to cover CTL. In the service agreement, DTI obligated itself to indemnify, defend, and hold CTL harmless against injury, damage or loss in connection with the service agreement "*unless such loss is caused by the gross negligence of CTL….*" (Doc. 34-2, ¶ 15 (emphasis added)). The reference to gross negligence clearly demarcates what level of culpability DTI is responsible to indemnity CTL against— grossly negligent acts are not covered by the indemnity agreement, but acts of ordinary negligence by CTL in connection with the agreement are fully indemnified by DTI. The reading urged by DTI would render the entire indemnity provision meaningless. While the agreement did not by express language explicitly state that DTI was liable to indemnify CTL for acts of ordinary negligence, that was the obvious and manifest intent of the parties. *See* La. C.C. art. 2045. DTI's argument that the language was not

9

unequivocal is baseless. DTI must indemnify CTL for acts of ordinary negligence under the clear implication of the agreement. Summary judgment in favor of CTL and against DTI is therefore proper because DTI is obligated to defend and indemnify CTL unless this Court finds CTL caused Young's injury through gross negligence.

    C. <u>Gulf South's Motion to Dismiss</u>

In its third party complaint, CTL asserts that DTI president Huey Beason directed Gulf South, as its insurance procurement agent, to cause CTL to be listed on DTI's liability insurance as an additional insured. (CTL Complaint, Doc. 30-3, ¶¶ 20-21).

Gulf South asserts CTL never established itself as a client of Gulf South, never came into privity with it, and thus never owed a duty to CTL to ensure the liability insurance listed it as an additional insured. CTL argues that it became a third party beneficiary to the procurement contract between DTI and Gulf South once DTI's president notified Gulf South of DTI's desire to add CTL as an insured. Gulf South argues that a stipulation *pour autrui*[5] must be in writing to be enforceable and no such writing exists.

The law on stipulations *pour autrui* comes from La. C.C. arts. 1978[6] and 1981[7] and the Louisiana Supreme Court's interpretation of those provisions in *Joseph v. Hospital Service District No. 2 of the Parish of St. Mary*, 939 So.2d 1206 (La. 2006). *Joseph* involved a service contract between a hospital and a medical corporation for the provision of anesthesia services by doctors affiliated with the medical corporation. 939

---

[5] Louisiana law uses this term to describe third party beneficiaries. *Joseph v. Hospital Service District No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1211 (La. 2006).
[6] "A contracting party may stipulate a benefit for a third person called a third party beneficiary…." La. C.C. art. 1978.
[7] "The stipulation gives the third party beneficiary the right to demand performance from the promisor…." La. C.C. art. 1981.

10

So.2d at 1208.  The hospital later terminated the contract, and the doctors sought to enforce its terms as third party beneficiaries.  *Id.* at 1208-09.  The lower courts disagreed on whether the doctors could do so.  *Id.* at 1209.  Finding that "the code has left to the jurisprudence the obligation to develop the analysis to determine when a third party beneficiary contract exists," the Louisiana Supreme Court announced three criteria determined whether the parties provided a benefit for a third party:

> (1) The stipulation for a third party must be manifestly clear;
> (2) There must be certainty of the benefit provided to the third party; and
> (3) The benefit cannot be a mere incident to the contract between the promisor and promisee.

*Id.* at 1212.  In determining the third factor, the court found persuasive a law review article by Professor J. Denson Smith,[8] which identified certain factors pointing to an intended rather than incidental benefit.  Among them are: 1) the existence of a legal relationship between the promisee and the putative beneficiary involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge, and 2) the existence of a factual relationship between the promisee and the putative beneficiary where there is a possibility of future liability on the part of the promisee to the beneficiary against which the performance by the promisee will protect the beneficiary.  *Andrepont*, 231 So.2d at 350-51 (citing Smith, *Third Party Beneficiaries in Louisiana*, 11 Tulane L. Rev. at 58).

In this case, CTL alleges that, based on DTI President Beason's deposition, DTI has admitted it clearly asked Gulf South to amend its insurance policy to add CTL as an additional insured.  (Third Party Complaint, Doc. 30-3, ¶ 21).  If proven, this would clearly satisfy the first two *Joseph* criteria—Beason clearly asked his insurance agent to

---

[8] Smith, *Third Party Beneficiaries in Louisiana: The Stipulation* Pour Autrui, 11 Tulane L. Rev. 18 (1936) (cited with approval in *Andrepont v. Acadia Drilling Co.*, 231 So.2d 347 (La. 1969)).

11

provide a certain benefit for CTL. As for whether CTL would be an intended or incidental beneficiary, the factors identified by Professor Smith (and approved by the *Andrepont* and *Joseph* courts as an analytical tool) point decisively in favor of CTL being an intended beneficiary, not merely an incidental one. CTL and DTI clearly have a legal relationship under their service agreement. Furthermore, the duties and obligations arising under the service agreement involve a practical risk of liability which could be protected against by DTI having its insurance policy cover DTI.[9] Because both legal and practical considerations support an inference of intent to make CTL a third party beneficiary to DTI's procurement contract with Gulf South, the Court concludes CTL has stated a claim for a stipulation *pour autrui* which is plausible on its face.

Gulf South states several objections which present obstacles to this conclusion. First, they contend a stipulation *pour autrui* must be in writing. *Joseph*, however, overruled any such prior rule. *See Joseph*, 939 So.2d at 1215, n. 13 ("There is no general requirement that stipulations *pour autrui* be in writing. However, if the contract must be in writing …, then the stipulation *pour autrui* must also be in writing."). Gulf South expressly admits its contract with DTI was oral, and it identifies no provision of law which mandates that insurance procurement contracts must be in writing. It is therefore immaterial that the alleged stipulation *pour autrui* in this case is not in writing.

Second, Gulf South contends that Louisiana case law insulates an insurance procurer from any duty to a third party because its duty only runs to its clients. *See,*

---

[9] This is true even if the service agreement fails to actually require DTI to add CTL as an additional insured on DTI's insurance policies. It is the *intent* to benefit the third party, not the *obligation* to benefit them, that is relevant here. In this respect, CTL has clearly alleged that DTI intended to benefit CTL by adding it as an additional insured. (Third Party Complaint, Doc. 30-3, ¶¶ 20-25). CTI's corporate representative Huey Beason admitted in his deposition to thinking the service agreement, even with its "where applicable" language, required CTI to add CTL as an additional insured. (Beason Deposition, Doc. 34-3, pp. 7-11).

12

Case 3:09-cv-01109-JJB -SCR   Document 67   11/30/11   Page 12 of 16

*e.g., Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La. 1973); *Lebouef v. Colony Ins. Co.*, 486 So.2d 760 (La. App. 1st Cir. 1986); *Oliver v. Natchitoches Air Center*, 506 So.2d 558 (La. App. 3d Cir. 1987), *writ denied*, 507 So.2d 220 (1987); *Campbell v. Continental-Emsco Co.*, 445 So.2d 70 (La. App. 2d Cir. 1984), *writ denied*, 446 So.2d 1223 (1984). *But see Sturcke v. Clark*, 261 So.2d 717 (La. App. 4th Cir. 1972), *writ denied*, 263 So.2d 6647 (1972) (allowing tort victim's subrogated insurance carrier to sue the insurance agent of the tortfeasor). These cases are inapposite of the issue before the Court. *Karam* simply affirmed that an insurance agent owes a duty to his client; it did not discuss that duty as exclusive of a duty to non-clients. 281 So.2d at 730. *Lebouef*, *Oliver* and *Campbell* simply stand for the proposition that a duty-risk analysis does not create a duty for the insurance agent to procure insurance for an unidentified, potential tort victim who may be harmed by the agent's client. *Lebouef* involved an injured seaman, 486 So.2d at 760, *Oliver* involved a plane crash victim, 506 So.2d at 558, and *Campbell* involved a man injured in an oil rig accident, 445 So.2d at 71. Those cases dealt only with the issue of whether the Direct Action Statute, La. R.S. 22:655, gave a cause of action to a plaintiff injured by the insurance agent's client, when such agent had negligently failed to procure the amount of insurance its client directed it to obtain on its behalf. As Gulf South quite tellingly describes this case line, a "Third-Party tort victim does not have a right of action against the tortfeasor's insurance agent because the procuring insurance agent's duty only extends to its client." (Status Report, Doc. 25, p. 13). But for purpose of this third-party complaint, it is Gulf South itself, and not its client DTI, that is alleged to have performed the primary wrongful conduct that forms the substance of the claim.

13

Case 3:09-cv-01109-JJB -SCR   Document 67   11/30/11   Page 13 of 16

The issue presented is thus quite different since the Gulf South agent here was allegedly directed to add a particularly identified party to an insurance policy already covering its own client. Thus, even if the Court chose to follow the line of cases identified by Gulf South rather than the *Sturcke* holding, those cases would still not compel the conclusion urged by Gulf South. This is not a case where a member of the general public was by happenstance injured by an insurance agent's client and brings against the agent for the agent's failure of a duty owed to the injured plaintiff. Rather, this is a case where a client directs its agent to perform an act to benefit both the client (since DTI here thought it was fulfilling its contractual duties under the service agreement) and a particular third party (since CTL would obviously benefit from receiving the liability insurance coverage it contracted for). Louisiana law therefore does not necessarily deny the existence of a duty on the part of Gulf South to CTL.

Third, Gulf South contends in the alternative that, even if the general law does not forbid oral stipulations *pour autrui*, the service contract between DTI and CTL required amendments to that contract to be in writing. That contract, it contends, therefore requires that any stipulation *pour autrui* arising from DTI's procurement contract with Gulf South must therefore also be in writing. The Court cannot accept this contention. The requirement of a written amendment to the service contract (Doc. 34-2, ¶ 9) pertained, quite clearly, only to amendments to the service contract between CTL and DTI. It cannot be read as somehow requiring the separate, oral procurement contract between DTI and Gulf South to permit only written stipulations *pour autrui*.

Because the Court finds CTL has validly pled facts which make the existence of a stipulation *pour autrui* claim plausible on its face, the Court must now determine the

precise theory underlying CTL's complaint. Reading the complaint as a whole, the Court finds the complaint raises both a contract and a tort claim against Gulf South.[10] Most of the facts alleged in the complaint regard the obligations and duties that arose between DTI and CTL under their service agreement, which led DTI to perform certain alleged actions in order to fulfill the requirements it thought the service agreement imposed on it. Indeed, the parties in their briefing often merge their arguments over whether Gulf South had a tort duty to CTL and whether Gulf South had a contractual obligation to DTI for the benefit of CTL. The facts in this case cause those inquiries to substantially overlap to such an extent that, here, the tort claim is subsumed within the contract claim.

"It is the nature of the duty breached that should determine whether the action is in tort or in contract." *Scott v. Sears, Roebuck and Co.*, 778 So.2d 50, 53 (La. App. 1st Cir. 2000). "Contractual damages arise out of the breach of a special obligation contractually assumed, and delictual damages arise out of the violation of a duty owed to all persons." *Strahan v. Sabine Retirement & Rehab. Center, Inc.*, 981 So.2d 287, 291 (La. App. 3d Cir. 2008). The only feasible discussion of a tort duty that Gulf South owed to CTL arises from the alleged stipulation *pour autrui*, and thus the exact same facts which inform the existence of a contractual obligation arising from a stipulation *pour autrui* would also determine the existence of a tort duty. The breach and causation prongs of a tort analysis would also involve precisely the same fact—the non-existence

---

[10] The third party complaint (Doc. 30-3) specifically pleads a negligence cause of action (*id.*, ¶ 26), but the thrust of the allegations also put Gulf South on notice that a contractual breach of a stipulation *pour autrui* occurred. Construing the allegations so as to do justice, Fed. Rule Civ. P. 8(e), the Court detects enough factual allegations to permit a contractual claim to go forward. The parties' discussion of the claims in the Status Report confirms this impression. (Status Report, Doc. 25, pp. 8-9 (discussing CTL's claims against Gulf South in both a contractual and tort context)).

Case 3:09-cv-01109-JJB -SCR   Document 67   11/30/11   Page 15 of 16

of a liability insurance policy for DTI listing CTL as an additional insured—that a contractual breach inquiry would entail. The duty allegedly breached arose out of the stipulation *pour autrui* that Gulf South allegedly failed to honor, not a general duty it owed to CTL. The Court therefore finds that, when viewed as a whole and not in strict isolation, the allegations in CTL's third party complaint put Gulf South on notice that CTL is entitled to relief for breach of the stipulation *pour autrui* Gulf South entered into with DTI for the benefit of CTL.

## IV. Conclusion; Order

Accordingly, DTI's motion for summary judgment is DENIED.

CTL's motion for summary judgment is GRANTED in part to the extent that DTI is required to defend and indemnify CTL unless and until the Court finds CTL was grossly negligent in the underlying wrongful death action by the plaintiffs. The remaining portion of CTL's motion is DENIED.

Gulf South's motion to dismiss is DENIED.

Signed in Baton Rouge, Louisiana, on November 28, 2011.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**